## 48025. M & M/MARS v. JONES.

EVANS, Judge. M&M/Mars, a corporation resident of the State of New Jersey, placed a note for collection with Attorney Marson G. Dunaway, Jr., which note was signed by William F. Jones. Suit was filed thereon in State Court of Polk County, Georgia, seeking the recovery of $960. Defendant Jones answered, denying the indebtedness, and filed a counterclaim against plaintiff for

$5,200, contending that he was a former full time employee of plaintiff corporation for 21 years, and that his employment was terminated through no fault of his own, and that the above sum represented the value of services rendered for which he had not been paid.

Upon being served with the answer and counterclaim, plaintiff corporation sought to evade same by moving to dismiss its suit, as well as counterclaim, alleging that its Georgia attorney filed suit "inadvertently in the belief that he had been authorized to file suit for plaintiff," but that certain correspondence shows that "no authority to file suit was ever given."

A hearing was held and the judge of the lower court refused to allow a dismissal. Plaintiff appeals. *Held:*

1. One of the all-important questions in a lawsuit is venue — where shall the litigation take place? The person filing the suit oftentimes has a choice and it is a very strategic part of the lawsuit. Where the plaintiff is a nonresident of Georgia, prudence often dictates that no suit be filed, lest the defendant be allowed to come in court on his own home-ground and litigate all differences with the nonresident plaintiff "in his own backyard." But the election as to whether to file or not to file must be made before the suit is filed, and not after a counterclaim has been filed by the defendant.

2. It is not contended that the attorney who filed the suit did not in fact represent the plaintiff, but it is contended that his authority was limited, and that he was not authorized to file suit. It is quite significant that the only evidence offered at the hearing, other than an affidavit by the attorney, was a letter written by a collection agency almost five months after the suit was filed, stating that plaintiff was greatly displeased and unhappy with the way the claim was being handled, and wished the suit dismissed promptly. The letter also recited, "He (the top man at M & M/Mars) indicated that at no time did you have authorization to proceed with a lawsuit on this account." No letters or documents were introduced predating the filing of suit which might have shown a limitation on the attorney's authority to proceed with suit. It would be presumed that the nonresident had correspondence of some nature with the attorney when the claim was placed with him, and the failure of plaintiff to introduce it, or to account for it, creates a presumption against plaintiff under Code § 38-119. Why was this correspondence withheld? Why was the court not made acquainted fully with the

terms under which the attorney was employed?

3. But the letter itself was the rankest kind of hearsay evidence, and further was a self-serving declaration. A party is not allowed "to make evidence for himself" after litigation is begun by self-serving statements. *Denton v. Etheridge,* 73 Ga. App. 221 (3) (36 SE2d 365). And whether objected to or not, a self-serving declaration has no probative value whatever. *Claybourn v. State,* 190 Ga. 861 (1a) (11 SE2d 23). The same is true of hearsay evidence. *Jones v. State,* 50 Ga. App. 97 (176 SE 896). Thus, both as a self-serving declaration and as hearsay evidence, the letter did not help plaintiff's case one iota.

4. Both the letter and the attorney's affidavit fit into the same pattern. Neither the letter nor the attorney's affidavit recite that when the claim was placed with the attorney, he was instructed *not* to file suit; they both simply seek to show that no specific authorization to file suit was granted by plaintiff to the attorney. The affidavit is much weaker than the letter, because it asserts no fact except its reliance on the letter (written almost five months after suit was filed) in this language: "Plaintiff has brought to counsel's attention correspondence in the matter which shows that suit requirements were requested but no authority to file suit was ever given." The above language constitutes a vague and evasive statement. The attorney does not swear to the truth of the statement, but only that the "correspondence . . . shows" certain things. Didn't the attorney know whether he was authorized to file suit or not? Was it necessary to say the "correspondence shows"? The case would have a completely different complexion had the attorney sworn positively and forthrightly that he had no authority to file the suit, *and was instructed not to file suit when the note was placed with him for collection.* The trial judge had absolutely no evidence upon which he could have determined that the attorney was without authority to file the suit. The attorney did not testify as to what he knew, but testified that the correspondence would show certain things. But the correspondence was written long after suit was filed; was hearsay, being from a collection agency as to what some officer of plaintiff corporation had said; was self-serving, being an attempt to "make evidence for himself" after suit was filed; and was therefore inadmissible and without probative value even if admitted without objection. What evidence therefore had the court before it upon which it could make a decision in favor of the attorney's want of authority to

file suit?

5. Neither the correspondence (assuming arguendo that it was admissible and had probative value, which it did not), nor the affidavit, overcomes the presumption of the attorney's authority to represent the client as set forth in Code § 9-604; and his authority to bind the client, as set forth in Code Ann. § 9-605.

6. When a creditor places with an attorney for collection a claim against another, unless he gives direct instructions *not to file suit,* the law presumes the attorney has the authority to file suit and do all else necessary to effect the collection. *Chamberlin Co. of America v. Mays,* 96 Ga. App. 755, 758 (101 SE2d 728); *McCoy v. McSorley,* 119 Ga. App. 603 (2) (168 SE2d 202); *Dean v. Jackson,* 219 Ga. 552 (1) (134 SE2d 601). This was tersely held in *John Bean Mfg. Co. v. Citizens Bank of Gainesville,* 60 Ga. App. 615 (1, 2) (4 SE2d 924), where the following language was used (p. 617): "However, the main purpose of the collection is to *secure the cash;* and we think that anything immediately incidental or necessary thereto is within the scope of the authority of the attorney in legally effectuating the collection. The following language of the Code, § 4-301, is apropos: 'The agent's authority shall be construed to include all necessary and usual means for effectually executing it.' See *Johnson v. Johnson,* 184 Ga. 783 (193 SE 345). It was said in *Holman v. Ga. Railroad,* 67 Ga. 595: 'Authority to an agent to do a thing generally includes authority to do everything usual and necessary for accomplishment of the main object. Hence authority to sell personalty includes authority to deliver it.' "

7. The question here is not whether the plaintiff was displeased with the attorney's actions after a sizeable counterclaim was filed against it by defendant; but rather as to whether the plaintiff had ever instructed its counsel *not to file suit* at the time it placed with the attorney the note for the purpose of collection from the debtor. It is too late after counterclaim is filed to make objections to his filing the suit.

8. The trial judge would have been placed in a somewhat embarassing position had he granted plaintiff's motion, which would have declared that the lawyer filed the suit without authority from his client. Then, under Code § 9-602 the judge would have been absolutely required to hold the lawyer in contempt of court, and to have imposed sentence, the very minimum being a fine of $500. This statute leaves the trial judge no discretion whatever, but uses the mandatory language: "and

*must* be fined in a sum not less than $500." (Emphasis supplied.) For the foregoing reasons the court did not err in denying the motion to dismiss.

*Judgment affirmed. Hall, P. J., and Clark, J., concur.*

Submitted April 4, 1973 — Decided July 3, 1973 — Rehearing denied July 18, 1973 — 

*Marson G. Dunaway, Jr.,* for appellant.
*Mundy, Gammage & Cumming, William D. Sparks,* for appellee.